DRAINAGE COMRS. OF UNION DRAINAGE DIST. NO. 1, etc.

*v.*

J. H. MILLIGAN *et al.*

*Opinion filed April 18, 1907—Rehearing denied June 6, 1907.*

APPEALS AND ERRORS—*when an appeal from drainage assessment order does not lie to Supreme Court.* An appeal from the county court to the Supreme Court will lie from a final order confirming a drainage assessment, but not from a prior order in the case partly sustaining and partly overruling an objection to the report of the drainage commissioners and modifying the report and approving the same as modified.

APPEAL from the County Court of Whiteside county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

C. L. & C. E. SHELDON, for appellants.

JOHN A. WARD, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Union Drainage District No. 1 of Hahnaman and Montmorency townships, of Whiteside county, Illinois, was organized in 1882 under the act of 1879, commonly known as the Levee act. Its main ditch had its outlet at the township line, on the west side of Hahnaman and Montmorency townships, into the main ditch of a district organized under the Farm Drainage act, known as Union Special Drainage District of the towns of Tampico, Prophetstown and Hume, in Whiteside county. The natural incline and drainage of the lands embraced in both districts appear to have been to the westward, so that the surface of the land in Union Drainage District No. 1 was higher than the surface of the land in the district immediately west of it. On September 14, 1906, the commissioners of Union Drainage District No. 1 of Hahnaman and Montmorency townships filed their

petition in the county court of said Whiteside county, in which it was stated that the ditches of said district, consisting of a main ditch and four laterals, had been constructed in 1883, and that all the money that had been raised by assessments of the lands in the district had been exhausted in the construction and repair of said ditches and for incidental expenses. It was then alleged that the lateral ditches were out of repair and so filled up as to obstruct the flow of water, so as to deprive the lands of the benefits intended and contemplated by the improvement; also, that the main ditch had filled up in places and needed repair in order to afford proper and adequate drainage. The petition further recited that in May, 1904, the land owners in said district presented the commissioners a petition signed by a majority of said owners who owned more than one-third of the lands embraced in said district, requesting the commissioners to clean out, deepen and enlarge the main ditch and all the laterals, and that the expense of so doing be paid by special assessment against the lands in the district. The petition further alleged that the commissioners had caused a survey, plat and profiles to be made by a competent surveyor, which were annexed to and made a part of the petition, together with estimates of the amount of earth to be removed and the expense of the work proposed to be done. The amount estimated was $6000, which the petition averred would not exceed the benefits to the land, and prayed that the commissioners might be authorized, by an order of the court, to make the assessment. To this petition was attached the petition of the land owners referred to therein. The court thereupon ordered notice to be given, as required by statute, that a hearing on said petition would be had October 1, 1906. At said hearing October 1 the court found the cost and expense of the proposed work would not exceed the benefits to the land, and ordered the commissioners to make report of their conclusions, with proper surveys, profiles, plats, plans and speci-

fications of the proposed work, and that upon the filing of the same by said drainage commissioners the clerk of the county court give notice of a hearing on said report, in accordance with the requirements of the Levee act.

October 2, 1906, the drainage commissioners filed in the court their report, with survey, profiles, plats, plans and specifications and estimates of the cost of the work. Said report contained a history of the district and of the work done therein since the date of its organization, and a statement of the need of further work and the reasons therefor. Said report did not contemplate any work on the main ditch, but stated no work thereon was necessary. The reason no work was necessary to be done on the main ditch was stated to be, that two years previous an assessment had been levied against the lands in the district for the purpose of improving and repairing the ditches; that with the money collected from that assessment the main ditch was cleaned out, deepened and enlarged; that all the money collected from that assessment was expended in doing this, leaving no means to do any work on the lateral ditches. It was therefore proposed in the said report to expend the $6000 sought to be raised by the special assessment in improving lateral ditches Nos. 1, 2 and 3.

To this report appellees filed three objections. The second and third were overruled by the court and no question of the correctness of that ruling is raised here. The substance of objection No. 1 was, that laterals 2 and 3 of said district emptied into the main ditch a mile north-east of objectors' lands; that there were five thousand acres east of objectors' lands, and that to drain their lands successfully required deepening the main ditch for a distance of three-fourths of a mile east of the township line, which is the west boundary of said district; that said main ditch had as an outlet one of the ditches of Union Special Drainage District of the towns of Tampico, Prophetstown and Hume, which continued south-westerly, crossing under the Illinois

227—20

and Mississippi canal; that said ditch of Union Special Drainage District, from the township line on its east boundary, where the ditch of Union Drainage District No. 1 emptied into it, required cleaning and deepening westward about one mile in order to afford objectors under-drainage for their lands. The objectors claimed that unless said ditch of Union Special Drainage District was cleaned and deepened, the water brought down the ditch, where it passes through their lands, would not be properly carried off and their lands would be thereby greatly damaged.

After a hearing, in pursuance of a notice for that purpose, on November 26, an order was entered by the county court partially sustaining objection No. 1 and modifying the report of the drainage commissioners. The modification consisted in ordering, in addition to the work proposed to be done by the report of the commissioners and the assessment to be levied to pay for the same, that the main ditch of said district be deepened from a point three-fourths of a mile east from the town line between Hahnaman and Tampico townships west to said town line, and that the ditch of said Union Special Drainage District, into which the main ditch of Union Drainage District No. 1 emptied, be deepened from said town line westerly to the Illinois and Mississippi canal crossing, and westerly from that point to the west line of section 1 of the town of Tampico, according to profiles made by engineer John D. Arey, on file in said court. The order further recited that the cost of the proposed work of the main ditch in the two drainage districts would be $900, and the drainage commissioners of said Union Drainage District No. 1 were directed to levy this additional amount to the $6000 proposed in their report. From the order amending and modifying said report of the commissioners and approving it as modified, this appeal is prosecuted from the county court direct to this court.

We are of opinion this court has no jurisdiction to entertain the appeal. Section 25 of the Levee act provides

for appeals from and writs of error to county courts to review judgments confirming the assessment and ordering it spread upon the records. This is the only provision we find in said act relating to appeals. In *Lacey Drainage District* v. *Langellier,* 215 Ill. 271, the drainage commissioners presented a petition to the county court for leave to make assessments to repair and improve the district. The petition stated that the pumping station in the district would have to be moved to another locality and that certain additional ditches would have to be constructed to provide proper outlets. The prayer of the petition was granted and assessments spread by the commissioners, to which objections were filed by Langellier and later by one other party. The drainage commissioners thereupon amended their petition, alleging they had secured the release of the right of way and of all damages from the owner of the land through which the proposed new ditch would pass, and also a release from the same man as owner of the land where the pumping station was to be located, and the releases were filed with the amendment. The objectors objected to the filing of said amendment, and the court thereupon entered an order vacating all orders made subsequent to the filing of the petition, and the drainage district prosecuted an appeal from that order. Their contention was, that the court had no authority, at a subsequent term, to set aside the order granting the prayer of the petition made at a former term, and that if it did have such authority it erred in setting aside said orders. The court said (p. 274) : "The correctness of the first proposition depends upon whether the orders made prior to the last order complained of were final judgments or orders, and the only one here involved of any consequence is that delegating the authority to the commissioners to assess the benefits. We think the orders were not final orders or judgments, but were ancillary or interlocutory to the proposed judgment of confirmation of the assessment. The statute contains no provision for appeal

or writ of error from any order until the order of confirmation of the assessment is entered, and from the latter order appeals and writs of error may be had. No previous proceeding seems to be declared final by the statute other than that of the incorporation of the district, and we are of the opinion that it was competent for the land owners to object to the assessment on the ground that the parties making it were not, under the law, for any reason they might assign, competent to make the same. The order appealed from is not a final order or such an order as authorized or would support an appeal. It did not make any final disposition of the case or dismiss the petition." This view is supported also by *Iroquois Drainage District* v. *Harroun, 222* Ill. 489.

Our conclusion is that the order appealed from was not a final judgment from which an appeal would lie.

The appeal is therefore dismissed.

*Appeal dismissed.*